**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| MELLANOX TECHNOLOGIES, LTD., IRWIN FEDERMAN, JON A. OLSON, GLENDA DORCHAK, AMAL M. JOHNSON, JACK R. LAZAR, UMESH PADVAL, DAVID PERLMUTTER, STEVE SANGHI, EYAL WALDMAN, and GREGORY L. WATERS, | ) ) ) ) ) ) ) ) ) | <u>CLASS ACTION</u> |
| Defendants. | ) ) | |

<u>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**</u>

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This action stems from a proposed transaction announced on March 11, 2019 (the "Proposed Transaction"), pursuant to which Mellanox Technologies, Ltd. ("Mellanox" or the "Company") will be acquired by NVIDIA Corporation ("NVIDIA"), NVIDIA International Holdings, Inc. ("Parent"), and Teal Barvaz Ltd. ("Merger Sub").

2.      On March 10, 2019, Mellanox's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with NVIDIA, Parent, and Merger Sub.  Pursuant to the terms of the Merger Agreement, shareholders of Mellanox will receive $125.00 in cash for each share of Mellanox common stock.

3.      On April 22, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.   Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Mellanox common stock.

9.      Defendant Mellanox is an Israeli company with offices located at 165 Broadway, Suite 2301, New York, New York 10006.  Mellanox's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "MLNX."

10.    Defendant Irwin Federman is Chairman of the Board of the Company.

11.    Defendant Jon A. Olson is a director of the Company.

12.    Defendant Glenda Dorchak is a director of the Company.

13.    Defendant Amal M. Johnson is a director of the Company.

14.    Defendant Jack R. Lazar is a director of the Company.

15.    Defendant Umesh Padval is a director of the Company.

16.    Defendant David Perlmutter is a director of the Company.

17.    Defendant Steve Sanghi is a director of the Company.

18.    Defendant Eyal Waldman is President, Chief Executive Officer, and a director of the Company.

19.    Defendant Gregory L. Waters is a director of the Company.

20.    The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Mellanox (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.    This action is properly maintainable as a class action.

23.    The Class is so numerous that joinder of all members is impracticable.  As of March 7, 2019, there were approximately 54,515,916 shares of Mellanox common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.    Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff

and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

28.     Mellanox is a leading supplier of end-to-end Ethernet and InfiniBand smart interconnect solutions and services for servers and storage.

29.     The Company's interconnect solutions increase datacenter efficiency by providing the highest throughput and lowest latency, delivering data faster to applications and unlocking system performance capability.

30.     The Company offers a choice of fast interconnect products: adapters, switches, software, and silicon that accelerate application runtime and maximize business results for a wide

range of markets including high performance computing, enterprise datacenters, Web 2.0, cloud, storage, and financial services.

31.     On March 10, 2019, Mellanox's Board caused the Company to enter into the Merger Agreement.

32.     Pursuant to the terms of the Merger Agreement, shareholders of Mellanox will receive $125.00 in cash for each share of Mellanox common stock.

33.     According to the press release announcing the Proposed Transaction:

NVIDIA and Mellanox today announced that the companies have reached a definitive agreement under which NVIDIA will acquire Mellanox. Pursuant to the agreement, NVIDIA will acquire all of the issued and outstanding common shares of Mellanox for $125 per share in cash, representing a total enterprise value of approximately $6.9 billion. Once complete, the combination is expected to be immediately accretive to NVIDIA's non-GAAP gross margin, non-GAAP earnings per share and free cash flow.

The acquisition will unite two of the world's leading companies in high performance computing (HPC). Together, NVIDIA's computing platform and Mellanox's interconnects power over 250 of the world's TOP500 supercomputers and have as customers every major cloud service provider and computer maker. . . .

The companies have a long history of collaboration and joint innovation, reflected in their recent contributions in building the world's two fastest supercomputers, Sierra and Summit, operated by the U.S. Department of Energy. Many of the world's top cloud service providers also use both NVIDIA GPUs and Mellanox interconnects. NVIDIA and Mellanox share a common performance-centric culture that will enable seamless integration.

Once the combination is complete, NVIDIA intends to continue investing in local excellence and talent in Israel, one of the world's most important technology centers. Customer sales and support will not change as a result of this transaction

Additional Transaction Details

Post close, the transaction is expected to be immediately accretive to NVIDIA's non-GAAP gross margin, non-GAAP earnings per share and free cash flow. NVIDIA intends to fund the acquisition through cash on its balance sheet. In addition, there is no change to its previously announced capital return program for the rest of fiscal 2020. The transaction has been approved by both companies'

boards of directors and is expected to close by the end of calendar year 2019, subject to regulatory approvals as well as other customary closing conditions, including the approval by Mellanox shareholders of the merger agreement.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

34.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

35.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

36.     The Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, J.P. Morgan Chase & Co. ("J.P. Morgan") and Credit Suisse Group ("Credit Suisse").

37.     With respect to Mellanox's financial projections, the Proxy Statement fails to disclose, for all sets of projections: (i) all line items used to calculate and/or adjustments to (a) cost of goods sold, (b) gross profit, (c) research and development expenses, (d) sales and marketing expenses, (e) general and administrative expenses, (f) total operating expenses, (g) income from operations, (h) income before taxes, (i) net income, (j) net income per share, (k) EBITDA, (l) EBIT, and (m) EBIAT; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

38.     With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the range of discount rates from 10% to 12% and the perpetual growth rate ranging from 2.0% to 3.0%; (ii) the range of terminal values of the Company; (iii) the basis for selecting a 2.5% terminal value growth rate; (iv) the Company's net cash; and (v) the fully diluted number of the Company shares outstanding.

39.    With respect to J.P. Morgan's Analyst Price Targets for the Company, the Proxy Statement fails to disclose: (i) the individual share price targets observed by J.P. Morgan in the analysis; and (ii) the sources thereof.

40.    With respect to Credit Suisse's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the range of terminal values of the Company; (ii) Credit Suisse's basis for applying multiples of 7.5x to 10.5x; and (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 12.0%.

41.    The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

42.    The Proxy Statement also omits material information regarding potential conflicts of interest of J.P. Morgan and Credit Suisse.

43.    The Proxy Statement fails to disclose the timing and nature of the services J.P. Morgan provided to NVIDIA and its affiliates that resulted in a payment to J.P. Morgan in the amount of $670,000.

44.    The Proxy Statement fails to disclose whether Credit Suisse has performed past services for NVIDIA or its affiliates, as well as the timing and nature of the services and the amount of compensation Credit Suisse received for such services.

45.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger and Recommendation of the Board; (iii) Management Projections; (iv) Fairness Opinion of J.P. Morgan; and (v) Fairness Opinion of Credit Suisse.

47.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## <u>COUNT I</u>

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Mellanox**

48.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Mellanox is liable as the issuer of these statements.

50.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

51.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

53.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

54.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

55.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

**COUNT II**

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

56.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57.     The Individual Defendants acted as controlling persons of Mellanox within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Mellanox and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after

9

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

60.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  May 2, 2019                               **RIGRODSKY & LONG, P.A.**

                                          By:   */s/ Timothy J. MacFall*
                                                 Timothy J. MacFall
                                                 825 East Gate Boulevard, Suite 300
                                                 Garden City, NY 11530
                                                 (516) 683-3516
                                                 tjm@rl-legal.com

                                                 Brian D. Long
                                                 Gina M. Serra
                                                 300 Delaware Avenue, Suite 1220
**OF COUNSEL:**                                  Wilmington, DE 19801
                                                 (302) 295-5310
**RM LAW, P.C.**                                 bdl@rl-legal.com
Richard A. Maniskas                              gms@rl-legal.com
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312                                 *Attorneys for Plaintiff*
(484) 324-6800
rm@maniskas.com